# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD L. WINTON, | CASE NO. 1:10-cv-00468-SMS |
| Plaintiff, | |
| v. | ORDER REVERSING AGENCY'S DENIAL OF BENEFITS, DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF, AND REMANDING FOR FURTHER PROCEEDINGS |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Donald L. Winton, by his attorney, Law Offices of Lawrence D. Rohlfing, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.[1] Following a review of the complete record and applicable law, this Court finds that the Commissioner's determination of Plaintiff's residual functional capacity was not supported by substantial evidence and that further proceedings are necessary to determine the nature and extent of Plaitnff's transferable skills. As a result, this Court reverses the decision below and remands for further proceedings.

///

---

[1] Both parties consented to the jurisdiction of a United States Magistrate Judge (Docs. 7 & 8).

I.      **Administrative Record**

    A.      **Procedural History**

On May 8, 2006, Plaintiff applied for disability benefits pursuant to Title II of the Social Security Act, alleging disability beginning July 28, 2005. His claims were initially denied on June 6, 2007, and upon reconsideration, on October 3, 2007. On November 3, 2007, Plaintiff filed a timely request for a hearing. Plaintiff appeared and testified at a hearing on March 16, 2009. On July 8, 2009, Administrative Law Judge Christopher Larsen denied Plaintiff's application. The Appeals Council denied review on January 11, 2010. On March 15, 2010, Plaintiff filed a complaint seeking this Court's review.

    B.      **The Agency Record**

Plaintiff Donald Winton (born May 18, 1953) began working as an electrician after completing college in 1975. He was last employed as an electrician by the City of Fresno. As a city electrician, Plaintiff diagnosed, repaired, and installed electrical equipment and wiring for the City. Plaintiff lifted 100 pounds occasionally and 25 pounds frequently. Plaintiff last worked on July 28, 2005, the alleged onset date.

Plaintiff has a history of neck and shoulder injuries. As a result of on-the-job injuries in January 1995, October 1998, November 2003, and September 2004, Plaintiff's treatment was largely evaluated, treated, and monitored by the workers' compensation system. In June 1995, Plaintiff had left shoulder surgery followed by physical therapy and strengthening exercise. An MRI of Plaitnff's left shoulder in November 2004 revealed fluid within the subacromial space, possible rotator cuff tear, and a SLAP-type lesion. In March 2005, degenerative arthritis in Plaintiff's right shoulder joint led to arthroscopy of his right shoulder.

Orthopedist David Taylor, M.D., treated Plaintiff from June 1994 to March 2009. In July 2005, Taylor opined that Plaintiff had full strength and normal sensation and motor function in his right shoulder. In November 2005, Taylor declared Plaintiff's right shoulder to be permanent and stationary, with normal sensation and motor function. He restricted Plaintiff to lifting less than ten pounds, with no overhead reaching or repetitive grasping with his right arm. In March 2006, Taylor again found Plaintiff's sensation and motor function were normal. He noted that Plaintiff

had retired from his job as a city electrician.  Taylor offered the same opinion in March 2009, adding that Plaintiff should not do vibrating work or power grasping with his left or right arm.

  Orthopedist William J. Previte performed an orthopedic evaluation for workers' compensation purposes in July 1996.  He examined Plaintiff, reviewed his medical records, and provided a written report.  Clinical tests revealed motor, sensory, and deep tendon reflex function of Plaintiff's upper extremities were all within normal limits.  Previte identified the following relevant objective disabilities: abnormal plain film radiographs, bone scan, and MRI studies of left shoulder; slight atrophy, left biceps; slight decreased range of motion, left shoulder; slight residual weakness, left supraspinatus on resisted testing; residual crepitus, subacromial space, left shoulder; persistent erythemia, left ear; and tenderness, left auricular nerve distribution.  Subjective factors included occasionally moderate neck and left trapezius pain and slight to moderate left shoulder pain.  According to Previte, Plaintiff should not push, pull, or lift heavy objects with his left upper extremity and should avoid heavy work above shoulder level.  Previte opined that Plaintiff could conduct his work activities on a permanently modified basis.

  Chiropractor Brian J. Killeen, D.C., reviewed Plaintiff's treatment in July 2004.  Killeen noted that Plaintiff consistently received passive treatment without receiving physical therapy and exercise from a physical therapist.  He opined, "There is no scientific basis for continued use of passive modalities and chiropractic manipulation at this time."

  Chiropractor Elizabeth Flores, D.C., completed a primary treating physician's permanent and stationary report in November 2004.  She opined that as a result of an on-the-job injury, Plaintiff had a permanent and partial disability.  Subjective factors were mid- to lower-back pain and bilateral lower extremity complaints.  Objective factors included positive orthopedic tests, local signs of spinal and soft tissue injuries, and a decreased range of lumbar motion.  Flores reported that Plaintiff could not perform heavy lifting or frequent bending and stooping.

  On January 5, 2006, Chiropractor Randy Willis evaluated Plaintiff for workers' compensation purposes.  He estimated 15 percent right shoulder impairment (4 % extension; 3 % flexion; 3 % abduction; 1 % external rotation; 4 % internal rotation).  Willis concurred with

///

Taylor's recommendation that Plaitnff could lift and carry less than ten pounds, with no overhead reaching or repetitive grasping with his right arm.

In March 2008, Taylor noted that Plaintiff was doing reasonably well with his right shoulder and that he took vicodin at night to decrease pain and promote sleep. Plaintiff's right shoulder had normal sensation and motor function with slightly decreased strength (4/5). His rotator cuff was well-maintained, and his shoulder had no significant degeneration or osteoarthritis.

Neurologist Abbas Mehdi examined Plaintiff as a consultant to the agency. Noting Plaintiff's medical history of shoulder, neck, and back problems, Mehdi found Plaintiff's station and gait to be normal and the range of motion in Plaintiff's right shoulder and neck to be minimally restricted. Plaintiff had no pain upon straight-leg raising[2] and normal hand grip, motor strength, reflexes and sensation. Mehdi opined that Plaintiff could lift and carry 100 pounds occasionally and 50 pounds frequently; could walk or stand six hours in an eight-hour workday; and could sit without restriction.

In May 2007, Brian J. Ginsburg, M.D., prepared a functional capacity form for the agency in which he opined that Plaintiff could lift and carry 100 pounds occasionally and 50 pounds frequently, and could sit, stand, or walk for six hours in an eight-hour work day.

Chiropractor Michael Salerno, D.C., provided chiropractic care to Plaintiff from February 1995 to December 2008. He opined that Plaintiff could not perform his job duties and was totally and permanently disabled.

Cheryl Chandler testified as a vocational expert. She testified that although DOT described the work of electricians as requiring medium exertion, as was common in commercial setting, Plaintiff's former job was performed in the heavy range of exertion. Plaintiff confirmed that her testimony was consistent with the Dictionary of Occupational Titles (DOT).

///

---

[2] The straight leg raising test is administered during a physical examination to determine whether a patient with low back pain has an underlying herniated disc. The test is positive if the patient experiences pain down the back of the leg when the leg is raised. *Miller v. Astrue*, 2010 WL 4942814 (E.D. Cal. November 30, 2010) (No. 1:09-cv-1257-SKO).

In a single hypothetical question, the ALJ directed Chandler to assume an individual of Plaintiff's age, education, and work experience, capable of light exertion with occasional bending, stooping, and reaching overhead. Describing the residual functional capacity of the hypothetical person was consistent with light exertion, Chandler agreed with the ALJ's assumption that these assumptions excluded Plaintiff's prior job.

Chandler opined that jobs existed for light level unskilled and semi-skilled electrical workers, specifically identifying a semi-skilled assembler (DOT No. 706.684-094), which had 15,300 jobs available in California. Additional semi-skilled jobs would be available to the hypothetical person with some additional training. Unskilled jobs included work as a cashier (DOT No. 211.462.010). Finally, 26 different types of sales representative positions (including DOT No. 279.357.010) requiring knowledge of electrical products were available in California, encompassing 241,000 jobs. Twenty thousand such jobs specifically required knowledge of electrical equipment.

## II.     Legal Standards

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

> Step one:   Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two:   Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

| | | |
|---|---|---|
| Step three: | Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. | |
| Step four: | Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. | |
| Step five: | Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. | |

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 28, 2005. He had multiple severe impairments: neck and shoulder pain status post surgery and degenerative osteoarthritis of the right acromioclavicular joint. His impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. He was unable to perform his past work as an electrician. Plaintiff had the residual functional ability to lift and carry twenty pounds occasionally and ten pounds frequently, to sit or to stand and walk six hours in an eight-hour work day; and to occasionally bend, stoop, and reach overhead. The ALJ concluded that Plaintiff was not disabled from the alleged onset date to the date of the decision.

### III.     Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). The Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*,

///

504 F.3d 1028, 1035 (9th Cir. 2007), *quoting Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

**IV.    Discussion**

    **A.    Did the ALJ Erroneously Reject Medical Opinion Precluding Plaintiff's Overhead Reaching?**

Plaintiff contends that the ALJ erred in failing to address Taylor's opinion that Plaintiff could not work at or above shoulder level with his right arm. Disparaging Plaintiff's reasoning, the Commissioner responds that the ALJ properly determined Plaintiff's residual functional capacity based on the record as a whole. Having reviewed the record as a whole, the Court finds that the ALJ's decision failed to adequately explain his reasoning and was not supported by substantial evidence in the agency record and must be reversed.

**Analysis of Expert Opinion.**  Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight that the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. The Social Security Administration favors the opinion of a treating physician over that of nontreating physicians. 20 C.F.R. § 404.1527; *Orn v. Astrue*, 495 F.3d 625, 631(9th Cir. 2007). A treating physician is employed to cure and has a greater opportunity to know and observe the patient. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

1  Nonetheless, an ALJ may disregard the opinion of a treating physician even if it is
2  uncontradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). But if he or she chooses
3  to do so, the ALJ must provide "specific and legitimate reasons" supported by substantial
4  evidence in the record. *Lester*, 81 F.3d at 830-31. An ALJ can meet this requirement by setting
5  forth a detailed and thorough factual summary, including all conflicting testimony; then
6  articulating his or her interpretation of this evidence; and finally, setting forth his or her findings.
7  *Magallanes*, 881 F.2d at 751. The ALJ cannot merely set forth conclusions; he or she must
8  provide his or her own interpretation and explain why it, rather than the doctors' interpretations,
9  are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). The regulations provide that
10 medical opinions be evaluated by considering (1) the examining relationship; (2) the treatment
11 relationship, including (a) the length of the treatment relationship or frequency of examination,
12 and the (b) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5)
13 specialization; and (6) other factors that support or contradict a medical opinion. 28 C.F.R. §
14 404.1527(d).

15 Plaintiff received extensive chiropractic treatment. Several chiropractors provided
16 opinions and reports in accordance with Plaintiff's worker's compensation treatment and the
17 settlement of his claims. As the ALJ recognized in his analysis of Chiropractor Salerno's
18 opinions, a chiropractor is not recognized as an acceptable medical source. 20 C.F.R. §
19 404.1513(a). Nonetheless, the Commissioner may consider evidence of the severity of a
20 claimant's impairments and the effect on a claimant's ability to work from other sources,
21 including chiropractors. 20 C.F.R. § 404.1513(d). Indeed, when the clinical notes or other
22 materials attributable to a chiropractor or similar source compose a significant portion of the
23 record, that evidence constitutes significant and probative evidence that the ALJ must consider.
24 *See Wick v. Astrue*, 2009 WL 2393106 at *9 (D.Or. July 31, 2009) (Civil No. 08-6108-MO). *Cf.*,
25 *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

26 Opinions from other sources are accorded less weight than that accorded the opinion of a
27 physician or other accepted source. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir.), *cert. denied*,
28 519 U.S. 881 (1996). Nonetheless, the opinions of other medical sources regarding the effects of

impairments on a claimant's ability to work must be considered and the weight given to those opinions must be explained. 20 C.F.R. § 404.1513(d); 416.913(d); SSR 06-03p. The ALJ gave the opinions of chiropractors Salerno, Flores, and Willis "some weight," the same amount he gave to Taylor's opinion.

In evaluating medical opinion, an ALJ must review the submitted evidence and explain the weight that he or she gives to the opinions of the various medical sources in the agency record. Credibility is a relevant factor. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005). What the ALJ meant when he wrote that he gave "some weight" to the various medical and chiropractic opinions is unclear.

The ALJ gave "some weight" to Taylor's March 2009 opinion that Plaintiff could perform modified work lifting no more than ten pounds, no working at or above shoulder height, and no repetitive power grasping or vibratory work with the right arm. But he ultimately rejected that opinion, finding that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, and could occasionally bend, stoop, and lift overhead. The ALJ's determination may have been based on Taylor's earlier opinions, which sometimes stated that Plaintiff could lift and carry no more than ten pounds, and at other times provided that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently. All of Taylor's opinions consistently provided that Plaintiff should not work at or above shoulder height, however. Accordingly, this Court is baffled by the ALJ's conclusion that, based on Taylor's opinion, Plaintiff was capable of "occasional . . . overhead reaching."

The ALJ also gave "some weight" to Salerno's opinion, which stated that Plaintiff could not perform his job duties in any capacity and was totally disabled. He then rejected Salerno's opinion as opining on an issue reserved to the Commissioner, stating that even if Plaintiff could no longer perform his prior work as city electrician, he was able to perform other work.

Similarly, the ALJ gave "some weight" to Flores' November 2004 report, which opined that Plaintiff was permanent and stationary following his November 2003 back injury, explaining

that it was "consistent with the residual functional capacity I have determined."[3]  Putting aside the questionable reasoning of giving weight to an opinion because it is consistent with the outcome favored by the ALJ, Flores' report was prepared prior to March 2005 right shoulder surgery and well before the alleged disability onset date of July 28, 2005.  Contrary to the ALJ's conclusion, Flores' opinion has no relevance to Plaintiff's residual functional capacity.

Finally, the ALJ gave "some weight" to Willis's January 2006 workers' compensation opinion regarding Plaintiff's September 2004 right shoulder injury, again because it was "consistent with the residual functional capacity I have determined."  The ALJ relied solely on Willis's percentage impairment ratings.  He did not acknowledge that Willis recommended that Plaintiff could return to work in accordance with the work restrictions that Taylor set forth on November 9, 2005: lifting less than ten pounds, with no overhead reaching or repetitive grasping with his right arm.

The inescapable conclusion following thoughtful review of the record as a whole is that substantial, credible, and relevant evidence did not support a determination that Plaintiff was capable of light work with occasional overhead lifting.  To the contrary, the substantial credible medical evidence in the record from examining and treating physicians within the relevant time period, and including at least one opinion favored by the ALJ in support of a light residual functional capacity, supported a single conclusion: that Plaintiff was capable of lifting and carrying less than ten pounds and incapable of work at or above shoulder level, that is, of sedentary work.  *See* 20 C.F.R. §404.1567(a).

**B.    Did the ALJ Properly Determine That Plaintiff had Transferable Skills?**

Whether Plaintiff is disabled or not disabled using the Medical-Vocational Guidelines (the "Grids") depends on whether or not Plaintiff has skills transferable to sedentary work.  Transferable skills are skills acquired in previous skilled or semi-skilled work that can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work.  20

---

[3] Curiously, stating that expert opinions are given weight because they are consistent with the residual functional capacity determined by the ALJ has become boilerplate in agency decisions rejecting disability applications.  Whatever the intended meaning, this peculiar language suggests that the opinion was selectively given weight in order to support a predetermined assessment of residual functional capacity.

C.F.R. §404.1568(d)(1). Transferability generally exists among jobs in which (I) the same or a lesser degree of skill is required; (ii) the same or similar tools and machines are used; and (iii) the same or similar raw materials, products, processes, or services are involved. 20 C.F.R. §404.1568(d)(2). A complete similarity of all three factors is not necessary. 20 C.F.R. §404.1568(d)(3).

Persons of advanced age who are limited to light or sedentary work will only be found not to be disabled if they have skills that can transfer to other skilled or semi-skilled work. 20 C.F.R. §404.1568(d)(4). A person of advanced age who is limited to sedentary work, such as Plaintiff, is generally considered not to be disabled only if the sedentary work is so similar to his or her previous work that little, if any, vocational adjustment is needed in terms of tools, work processes, work settings, or the industry. 20 C.F.R. §404.1568(d)(4).

Plaintiff requests remand, arguing that the Commissioner failed to follow the procedure required to determine whether Plaintiff had transferable skills. The Commissioner disagrees. This Court need not analyze whether the vocational expert testimony fully complied with agency procedures. Expert testimony regarding the transferability of Plaintiff's skills only considered positions available to individuals capable of light exertion. Because this Court finds that substantial evidence compelled a finding the Plaintiff's residual functional capacity was for sedentary work, and the agency never requested exert testimony regarding the transferability of Plaintiff's skills to sedentary positions, this case must be remanded for further proceedings to determine the transferability of Plaintiff's skills to sedentary positions.

**III.   Conclusion and Order**

"The court shall have the power to enter, upon pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In social security cases, the decision to remand to the Commissioner to award benefits is within the court's discretion. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however,

///

a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (*citation omitted*).

Determination of whether or not Plaintiff is disabled requires expert identification and analysis of Plaintiff's transferable skills to available sedentary employment, if any. Accordingly, remand is required.

This Court orders that the administrative determination be REMANDED for further proceedings in accordance with this decision and in conformity to applicable law. The Clerk of Court is hereby directed to ENTER JUDGMENT in favor of Plaintiff Donald L. Winton, and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:   June 3, 2011**                                   **/s/ Sandra M. Snyder**
                                                            UNITED STATES MAGISTRATE JUDGE